UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

CABRI CHAMBERLIN,

       Plaintiff,

v.

PSI UPSILON FRATERNITY, INC.,
a Pennsylvania non-profit Corporation;
XI CHAPTER OF PSI UPSILON FRATERNITY,
a voluntary association;
JOHN DOE, individually and as Social
Chairman and agent of Psi Upsilon Fraternity and Xi Chapter;
RICHARD ROE(S) 1-10, individually and as agents
of Psi Upsilon Fraternity and XI Chapter; and
KWAME CHIHOMBORI-QUAO, individually and
as an agent of Psi Upsilon Fraternity and Xi Chapter,
jointly and severally

       Defendants.

CIV. NO.:

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

    1.    On the night of May 3, 2013, Cabri Chamberlin and some of her friends visited the Xi Chapter of Psi Upsilon Fraternity ("Psi Upsilon") at Wesleyan University ("Wesleyan") after receiving an invitation from a dormitory hallmate who happened to be a Xi member. Upon arriving at the fraternity house, Cabri learned that male entrants were required to purchase tickets, though she was not, and that a pledge "strip show" was scheduled to occur that evening. Shortly after her arrival, she observed pledges of the fraternity as they performed their strip-tease act. This pledge event had been promoted, among Xi members exclusively, as an opportunity to engage in sexual encounters with female guests. Many of the pledges and attendees were underage and extremely intoxicated. The pledges began removing all of their clothes, and the event got wildly out of control as attendees knocked over furniture, spilled alcohol throughout

the area, and began dancing with the naked pledges. Upon observing this behavior, Cabri, becoming extremely uncomfortable, put on her coat to leave the event and texted her friend to meet her outside. As she walked towards the exit, a male picked her up from behind, put her on a tabletop, and started grinding with her. Cabri pushed his hands off her, climbed down, and continued heading towards the exit. Defendant Kwame Chihombori-Quao, naked and standing nearby, grabbed Cabri around the waist before she could reach the exit and threw her over the leg of a couch, pulled down her leggings, and raped her in the presence of numerous others.

2. Cabri fled the fraternity house, met her friend, and together they called Wesleyan Public Safety Officers and were taken to Middlesex Hospital. Utilizing a rape kit, Healthcare providers confirmed that Cabri had suffered multiple vaginal tears and bruising, and a diagnosis of sexual assault was documented.

3. Cabri brought disciplinary proceedings against Defendant Chihombori-Quao under Wesleyan's Code of Non-Academic Conduct. After hearings and the presentation, rebuttal, and consideration of evidence, Defendant Chihombori-Quao was found responsible for raping Cabri and expelled from Wesleyan.

4. No security or other form of sober, responsible management was present at the Psi Upsilon fraternity house (the "Psi U House") to, *inter alia*: reasonably control the pledge event and premises; protect Cabri; enforce risk management, alcohol, hazing, and sexual abuse prevention policies, procedures, and guidelines of Psi Upsilon Fraternity and Xi Chapter; prevent illegal conduct within the fraternity house; or intervene when Cabri was being sexually assaulted in a common area of the fraternity house and pleading with Defendant Chihombori-Quao to stop.

5.      Cabri placed herself on *leave of absence* status from Wesleyan and returned home; she has since undergone medical and psychological treatment for her severe injuries. Cabri brings this suit to recover for these injuries.

## JURISDICTION

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000. Venue is proper because the events giving rise to this suit occurred in this State and Judicial District.

7.      This Court also has jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

8.      Plaintiff Cabri Chamberlin is a citizen and resident of the State of Colorado, and at all times relevant to the misconduct by Defendants she was a student at Wesleyan in her freshman year.

9.      Defendant Psi Upsilon Fraternity, Inc. is a Pennsylvania not-for-profit corporation that has regularly transacted business in the State of Connecticut directly and through its Xi Chapter and through its active alumni members, alumni association, and foundation.

10.     Defendant Xi Chapter is an unincorporated voluntary association and agent of Defendant Psi Upsilon operating in Connecticut. Defendant Xi Chapter is chartered, governed, managed, and controlled by Defendant Psi Upsilon (together, collectively the "Fraternity Defendants"). Defendant Xi Chapter owns the Psi Upsilon House and recruits and initiates new members and generates revenue for Defendant Psi Upsilon. Defendant Psi Upsilon exercises control over the social activities, assets, risk management, and members of Xi Chapter.

11. Defendant John Doe, former Xi Chapter Social Chairman, upon information and belief, is not a citizen or resident of the State of Connecticut. Defendant Doe is a member of the Fraternity Defendants and at all relevant times undertook, yet failed to fulfill, his risk management and other social event duties as Social Chairman for the Fraternity Defendants.

12. Defendant Kwame Chihombori-Quao is, upon information and belief, a citizen and resident of the State of Tennessee.

13. Defendants Richard Roe 1-10, upon information and belief, are not citizens or residents of the State of Connecticut. These Defendants are members of the Fraternity Defendants who had, but violated, duties to: ensure that the Fraternity Defendants abided by all applicable laws and Fraternity safety and security, sexual abuse prevention, alcohol, and hazing policies, procedures, guidelines, and regulations; prevent the Fraternity Defendants from engaging in activities dangerous to the health and safety of others, such as Cabri; and protect Cabri from being raped in a common area of the Psi Upsilon House.

## GENERAL ALLEGATIONS

14. The Psi Upsilon House at 242 High Street, Middletown, CT, is situated on Wesleyan's campus and is qualified by Wesleyan as Program Housing, expressly allowing Wesleyan's student-members of the Xi Chapter to live on the premises.

15. As Program Housing, the Fraternity Defendants receive substantial financial and other benefits associated with University recognition so long as their operation and management of the Psi Upsilon House complies with the terms of the Wesleyan University Fraternal Organization/Housing Corporation Agreement (the "Housing Agreement").

16. The Housing Agreement impliedly requires the Fraternity Defendants to designate a Fraternity Officer(s) to undertake the responsibility of managing their activities to ensure the safety of residents and guests in the Psi Upsilon House.

17. The Housing Agreement requires the Fraternity Defendants to cooperate with Wesleyan's Public Safety Officials who, by the terms of the Housing Agreement and the Fraternity Defendants' insistence, are prohibited from even entering or providing security in the Psi Upsilon House unless Wesleyan Public Safety:  enters when the Fraternity Defendants call for assistance; responds to a call for assistance; enters during a registered social event to support the hosts and check for compliance with applicable university policies; enters with reasonable probable cause to suspect believe (*sic*) a specific policy relating to drugs or alcohol or a safety/security concern problem is/has occurred occurring (*sic*); or, enters upon exigent or emergency circumstances.

18. Fraternity Defendants' Chapter Operations Guide mandates that all acknowledged chapter houses designate an individual to fulfill the duties of social chairman, which include but may not be limited to the following:

   a. planning, coordinating, and managing all social activities of the chapter, the objectives of which include the engagement of fraternity members in creative, imaginative, and varied activities;

   b. promoting the social events;

   c. providing entertainment;

   d. ensuring strict compliance with risk management guidelines as they pertain to social events.

5

19.     The Fraternity Defendants maintain a core principle of self-government, and their Constitution enables them to regulate and administer the activities of their chapters through an Executive Council and various administrative and field officers. Fraternity Defendants stand upon this principle as a basis for demanding that they have full responsibility for managing the Psi Upsilon House and their fraternity events, to the exclusion of Wesleyan, Wesleyan Public Safety, and Wesleyan's housing services that generally provide such services to the general student population at other student housing.

20.     Despite demanding self-governance, the Fraternity Defendants fail to adequately and reasonably train themselves and abide by such responsibilities, particularly with respect to safety/risk management issues involving fraternity events, events inside the fraternity house, security, sexual abuse prevention, hazing, and the use and misuse of alcohol.

21.     Statistics, insurance claims analyses, studies and reports, and widely known incidents of catastrophic injury, rape, and death have *for decades* demonstrated the foreseeable risk of dangerous injury and death from poorly or wholly unsupervised fraternity events and fundamentally flawed risk management policies that rely upon self-government.

22.     In the late 1980s, the Fraternity Insurance Purchasing Group ("FIPG"), a consortium of Greek organizations organized to coordinate risk management strategies, widely published that "fraternities and sororities were ranked by the National Association of Insurance Commissioners as the sixth worst risk for insurance companies – just behind hazardous waste disposal companies and asbestos contractors."

23.     In 1997, the National Interfraternity Council ("NIC"), then comprising 66 Greek national organizations with 5500 chapters on 800 campuses throughout the United States and Canada, analyzed certain risks associated with Greek organizations and housing and concluded

that improper fraternity oversight of alcohol was "frighteningly pervasive." The NIC passed a Resolution encouraging "its member fraternities to pursue alcohol-free chapter facilities."

24. In 2001, the National Panhellenic Conference, representing sororities with more than 3 million members at campuses nationwide, adopted a resolution prohibiting its members from co-sponsoring alcohol-related events with fraternities. Most sorority houses have been alcohol-free since their inception.

25. The national fraternity, Phi Delta Theta ("Phi Delt"), implemented alcohol-free housing in 2000, and has published (globally, on the internet, and in paper-form) statistics and extensive information regarding the resultant success in reducing injuries and death. In "White Papers," authored by Dr. Edward G. Whipple in 2005 and 2010, Dr. Whipple documents over a ten-year period a 64% reduction in the number of injury/death claims against Phi Delt and a 94% reduction in its pay-outs, figures which correlate directly with a substantial reduction in the amount and severity of injuries and frequency of death.

26. Defendant Psi Upsilon knew, or in the exercise of reasonable care should have known, of such widely publicized and available information, studies and reports.

27. Notwithstanding such knowledge, information, and direct experience with injuries and death caused by its failed management, risk management policies, and means for implementing policies involving student safety, Defendant Psi Upsilon has repeatedly failed to undertake actions necessary to make its operations and chapter housing, nationwide and at Wesleyan, safe for invitees and guests such as Cabri.

28. Even today, Fraternity Defendants fail to provide accurate information and warning to women at Wesleyan though they know that Cabri was raped in their fraternity house by a pledge and that such information could be used by other women to take reasonable actions

7

to protect themselves. Upon information and belief, other similar incidents of rape and other substantial injuries involving Psi Upsilon fraternity chapters across the country have occurred, and such information has been kept from the public by Defendant Psi Upsilon.

29. Cabri began as a student at Wesleyan in fall 2012.

30. On the night of May 3, 2013, Cabri learned that there was a pledge event at the Psi U House that Wesleyan students were invited to attend. Upon information and belief, the pledge event was scheduled and authorized by the officers, members, and the social chairman of the Xi Chapter, and it was specifically planned by such persons that the pledges would perform a strip tease show and that large amounts of alcohol would be made available to pledges and guests.

31. Upon information and belief, the officers, members, and social chairman of Xi Chapter made no plans or provisions for the presence of reasonable security for the pledge event, and were otherwise negligent in planning this event that violated Wesleyan rules and the law.

32. Upon information and belief, the officers of Psi Upsilon Fraternity, Inc., pursuant to their governing documents, mandated that the designated officers of Xi Chapter ensure strict compliance with risk management, alcohol, sexual abuse, and hazing policies, procedures, guidelines, and codes at all times including but not limited to their enforcement at social events.

33. Upon information and belief, officers, including but not limited to the Xi Chapter social chairman, undertook the duties prescribed for them by Psi Upsilon Fraternity, Inc., pursuant to its governing documents including but not limited to its Constitution and Risk Management Policies and the Wesleyan University Fraternal Organization/Housing Corporation Agreement and other relevant documents and that Psi Upsilon Fraternity, Inc. would maintain

8

control over Xi Chapter's activities including but not limited to the risk management, sexual abuse, alcohol, and hazing policy education of its members.

34. Wesleyan's Community Standards and Residential Regulations apply to and govern the conduct of the Fraternity Defendants. These Standards and Regulations specifically provide that the host of a social event will be held liable for harm caused by its guests. "When residents host a gathering, they will be held accountable for the actions of their guests. If guest activity causes any harm to persons or property, both the responsible person(s) and the hosts may be held financially responsible."

35. The Fraternity Defendants were the hosts of the pledge event at which Cabri was raped.

## COUNT I - Negligence
### Fraternity Defendants and Defendant Social Chairman John Doe

36. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

37. The Xi Chapter exists as a chapter and agent of Psi Upsilon, chartered and allowed to exist by Psi Upsilon. Psi Upsilon retains significant control and supervision over the Xi Chapter through its laws, rules, policies and procedures, chapter operations guide, and use of staff and alumni advisors who regularly check and report on the Xi Chapter's activities and whether it is following Psi Upsilon's mandates.

38. The Fraternity Defendants, directly and through the Xi Chapter social chairman, Defendant Doe, assumed obligations of providing security for fraternity events, enforcing the terms and conditions of the Housing Agreement, its own risk management policies and procedures, and its chapter operations guide, and managing fraternity events so as to comply with the law and regulations of Wesleyan.

39. Fraternity Defendants and Defendant Doe owed statutory, common law, and assumed duties to plan lawful fraternity events, provide reasonably safe premises for such events, and to prevent/protect Cabri from being raped in a common area of the Psi Upsilon House at a fraternity event.

40. Fraternity Defendants and Defendant Doe negligently failed to comply with applicable laws and/or ordinances, including, without limitation, those prohibiting the unlicensed operation of sexually oriented businesses and the promotion and/or exhibition of live adult entertainment, enacted, in part, for the purpose of protecting individuals such as Cabri from criminal or other dangerous conduct including rape.

41. Defendants Xi Chapter and Social Chairman Doe did exhibit wanton or willful malicious misconduct or such conduct as indicates a reckless disregard of the just rights or safety of others by:

   a. planning, promoting, and exhibiting live male nudity and providing alcohol to minors and inebriants including Defendant Chihombori-Quao at an event to which unsuspecting females were invited; and

   b. by planning and promoting among Psi Upsilon members a strip show event known within the Fraternity community as a "hook-up" opportunity where pledges were encouraged to anticipate or to expect sexual encounters with female invitees.

42. Fraternity Defendants and Defendant Doe breached their duties by, among other things:

  a.  relying on underage, untrained members to manage the Xi Chapter, its activities, and the enforcement of risk management policies, the Code of Non-Academic Conduct, and the Psi Upsilon House;

  b.  failing to adequately train the Xi Chapter and its members and officers on risk management, alcohol and illegal drug policies, crisis management policies, sexual abuse and rape prevention, the Code of Non-Academic Conduct, Psi Upsilon Chapter Operations Guide, and other management policies and procedures;

  c.  failing to provide effective supervision and control over the Xi Chapter pledges, members and guests, and activities authorized, directed, and participated in by those members and guests;

  d.  failing to implement reasonable measures to enforce risk management policies to prevent sexual abuse and rape at the Psi U House and during fraternity activities;

  e.  failing to implement reasonable measures to enforce state laws, local ordinances, the Code of Non-Academic Conduct, and fraternity policies to make the Psi U House and Fraternity Defendants' conduct safer;

  f.  failing to implement reasonable measures to stop dangerous and/or unlawful activities which they knew, or should have known, were occurring within the Psi U House;

  g.  failing to implement and enforce reasonable safety/security measures when, by their own conduct, they created or increased the foreseeable risk that a young woman such as Cabri might be harmed by the conduct of a pledge or other attendee,

including harm caused by the foreseeable criminal sexual conduct of Defendant Chihombori-Quauo

      h.    failing to discipline the Xi Chapter members for engaging in activities that created the dangerous conditions at the Psi U House, implicitly allowing those conditions;

      i.    failing to reasonably train its members in student-housing management, or implement reasonable, safe student-housing management standards and practices under the circumstances;

      j.    failing to change fraternity policies regarding student safety, including safe student-housing management policies and practices that were, at the time of the allegations contained herein, under the control of undergraduate students who lack experience, who are unaware of the inherent, substantial risk of injury and death from such inadequate policies, and who do not understand the consequences of their failure to implement safer policies and practices;

      k.    failing to support proper risk management, crisis management, sexual abuse prevention and education, and house management programs;

      l.    hosting a social event while failing to provide appropriate monitors or security throughout the duration of the event to monitor the activities of both members and guests with the objective of promoting compliance with fraternity rules and policies, university rules and policies, local ordinances, Connecticut law, the Code of Non-Academic Conduct, and general safety; and

      m.    other negligent acts and omissions.

43. As a direct and proximate result of the negligence of Fraternity Defendants and Defendant Doe, Cabri was raped and sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

   a. past, present, and future pain and suffering, both physical and emotional;

   b. past, present, and future psychological trauma and impairment;

   c. medical bills and other expenses for past and future treatment;

   d. interference with continuing education and lost educational time;

   e. lost tuition;

   f. impaired educational capacity; and

   g. impaired earning capacity.

44. As a direct and proximate result of the negligence of Xi Chapter and Social Chairman Joe Doe, Cabri was raped and sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

   a. past, present, and future pain and suffering, both physical and emotional;

   b. past, present, and future psychological trauma and impairment;

   c. medical bills and other expenses for past and future treatment;

   d. interference with continuing education and lost educational time;

   e. lost tuition;

   f. impaired educational capacity, and

   g. impaired earning capacity; and

   h. punitive damages.

## COUNT II – Premises Liability
## Fraternity Defendants

45. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

46. Fraternity Defendants were at all relevant times the owners, occupants, and/or parties in control of the Psi U House.

47. Fraternity Defendants expressly undertook all obligations related to the provision of security in the Psi Upsilon House and for making fraternity events reasonably safe to invitees, such as Cabri.

48. Fraternity Defendants owed duties to social invitees on the property to exercise reasonable care to guard against foreseeable dangers arising from the use of the property.

49. Fraternity Defendants knew or, in the absence of negligence, had reason to foresee that women visiting the property could be harmed by others at events involving the illegal, negligent and/or reckless provision of alcohol to minors and the exhibition of live adult entertainment on the premises, particularly where, as here, there was a complete absence of security.

50. Fraternity Defendants breached their duties by, among other things:

    a. holding regular and notorious parties that involved provision of alcoholic beverages to minors and inebriates, that, by virtue of their promotion and exhibition of live male nudity, created an environment that made sexual assault and rape likely, and otherwise violated applicable laws, ordinances, regulations, and codes so as to create a public nuisance and danger to women;

  b. failing to plan and conduct fraternity events in compliance with applicable laws, ordinances, regulations, and codes prohibiting the provision of alcohol to minors, underage drinking, sexual abuse, rape, and other wrongdoing;

  c. hosting a social event and refusing to take reasonable steps to provide security and enforce applicable laws, ordinances, regulations, and codes prohibiting the provision of alcohol to minors, underage drinking, sexual assault, rape, and other wrongdoing;

  d. using the property in a manner that posed a foreseeable risk of harm to invitees, including Cabri; and

  e. other negligent acts and omissions.

51. As a direct and proximate result of Fraternity Defendants' negligent conduct, Cabri was raped and sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

  a. past, present, and future pain and suffering, both physical and emotional;

  b. past, present, and future psychological trauma and impairment;

  c. medical bills and other expenses for past and future treatment;

  d. interference with continuing education and lost educational time;

  e. lost tuition;

  f. impaired educational capacity; and

  g. impaired earning capacity.

## COUNT III – Battery
### Defendant Kwame Chihombori-Quao

48. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

49. On May 3, 2013, Defendant Chihombori-Quao sexually assaulted and raped Cabri, and, as a direct and natural consequence of same, caused her physical and psychological injuries including but not limited to, vaginal and other physical trauma, post traumatic stress disorder, anxiety disorder, and depression.

50. As a direct and proximate result of Defendant Chihombori-Quao's intentional, malicious, and outrageous conduct, Cabri sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a. past, present, and future pain and suffering, both physical and emotional;

    b. past, present, and future psychological trauma and impairment;

    c. medical bills and other expenses for past and future treatment;

    d. interference with continuing education and lost educational time;

    e. lost tuition;

    f. impaired educational capacity;

    g. impaired earning capacity; and

    h. punitive damages.

### COUNT IV – Intentional Infliction of Emotional Distress
### Defendant Kwame Chihombori-Quao

51. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

52. Defendant Chihombori-Quao engaged in extreme and outrageous conduct against Cabri which he intended, knew, or should have known would cause her emotional distress and did in fact cause her severe emotional distress exhibited through her physical and psychological injuries including but not limited to, vaginal and other physical trauma, post traumatic stress disorder, anxiety disorder, and depression.

As a direct and proximate result of Defendant Chihombori-Quao's intentional conduct, Cabri sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.    past, present, and future pain and suffering, both physical and emotional;

    b.    past, present, and future psychological trauma and impairment;

    c.    medical bills and other expenses for past and future treatment;

    d.    interference with continuing education and lost educational time;

    e.    lost tuition;

    f.    impaired educational capacity;

    g.    impaired earning capacity; and

    h.    punitive damages.

## PRAYER FOR RELIEF

Plaintiff demands judgment against Defendants as follows:

A.    compensatory damages on Count I;

B.    compensatory damages on Count II;

C.    compensatory and punitive damages on Count III;

D.    compensatory and punitive damages on Count IV; and

E.    such other and further relief that is just and appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

March 11, 2014

| BODE & GRENIER, LLP | KENNY, O'KEEFE & USSEGLIO, PC |
|---|---|
| By: *(signature)* | By: *(signature)* |
| DOUGLAS E. FIERBERG | Timothy O'Keefe |
| (Admission subject to approval) | Bar No. ct15005 |
| JAMES MCCULLEN | Kenny, O'Keefe & Usseglio, PC |
| (Admission subject to approval) | 21 Oak Street, Suite 208 |
| Bode & Grenier, LLP | Hartford, CT  06106 |
| 1150 Connecticut Avenue, N.W. | 860-246-2700 |
| Ninth Floor | |
| Washington, D.C.  20036 | |
| 202-828-4100 | |

**COUNSEL FOR PLAINTIFF**